## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAYLE A. RAYBUCK,<br>    Plaintiff<br><br>v.<br><br>OIL CITY POLICE DEPARTMENT PATROLMAN BRANDON ROSENBERGER, OIL CITY POLICE DEPARTMENT PATROLMAN STEVEN REMBOLD and OIL CITY POLICE DEPARTMENT LIEUTENANT JONATHON LOVE,<br>    Defendants | Docket No.: 1:20-cv-306<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

AND NOW comes the Plaintiff, Gayle A. Raybuck, by and through her attorneys, Quinn Buseck Leemhuis Toohey & Kroto, Inc., and files the within Complaint against the Defendants, Oil City Police Department Patrolman Brandon Rosenberger ("Rosenberger"), Oil City Police Department Patrolman Steven Rembold, and Oil City Police Department Lieutenant Jonathon Love ("Love"), of which the following is a statement:

## STATEMENT OF CLAIMS

1. Plaintiff seeks money damages and equitable relief from Defendants for violating her constitutional rights, and injunctive relief to prevent injury to herself in the future. She also brings forward supplemental claims for violations of the laws of the Commonwealth of Pennsylvania.

2. Plaintiff was the victim of excessive force by Defendant Rosenberger, as well as wrongful arrest and malicious prosecution by all Defendants in violation of the Fourth and Fourteenth Amendment to the U.S. Constitution and the laws of the Commonwealth of Pennsylvania.

3. Plaintiff brings suit under 42 U.S.C. § 1983.

## JURISDICTION

4. This Court has jurisdiction over the claims in this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 2201 (declaratory relief), and 42 U.S.C. §§ 1983, and 1988.

5. This action arises under the United States Constitution as applied to state and/or local authorities through 42 U.S.C. § 1983.

## VENUE

6. Venue is proper in this district based on 28 U.S.C. § 1391(b), as Defendants are residents of this district and the acts or occurrences giving rise to these claims occurred in this district.

## PARTIES

7. Plaintiff Gayle A. Raybuck in as adult individual and citizen of the Commonwealth of Pennsylvania; at all times relevant to this action Plaintiff resided in Clarion County, Pennsylvania.

8. Defendants are all, upon information and belief, individual members of the Oil City Police Department, a department of the government of Oil City, Pennsylvania.

9. Defendant Rosenberger was, at all times relevant, an Oil City Police Department Patrolman. He is sued in his individual capacity.

10. Defendant Rembold was, at all times relevant, an Oil City Police Department Patrolman. He is sued in his individual capacity.

11. Defendant Love was, at all times relevant, an Oil City Police Department Lieutenant. He is sued in his individual and official capacities.

12. All Defendant law enforcement officers, agents and/or employees were, at all times relevant to this Complaint, working as on duty officers of the Oil City Police Department ("OCPD") acting under color of state law and within the scope and course of their official duties and employment as officers.

## **FACTS**

13. At approximately 1:30 p.m. on October 17, 2018, Plaintiff was called by Beverly Dunkle ("Dunkle"), asking Plaintiff to care for "SK", a disabled adult individual with Down's Syndrome.

14. Linda Kuhns ("Kuhns") is the mother and was, at that time, the primary caretaker and guardian for SK; Kuhns was admitted to the hospital earlier that day with high blood pressure.

15. Plaintiff and Donna Dascombe ("Dascombe"), SK's grandmother, arrived at Kuhns's residence where SK was located at approximately 3:20 p.m. and were invited into the home by Judy Unkaford ("Unkaford"), an acquaintance of Kuhns's.

16. At that time, Plaintiff discovered that the house had no heat, was covered with cat feces, and that the suitcase supposedly packed for SK contained dirty clothing and women's underwear.

17. Plaintiff called OCPD at approximately 3:51 p.m. to report the unsafe living conditions to which Kuhns was subjecting SK.

18. Patrolman Steven Rembold ("Rembold") responded to the call. Plaintiff and Dascombe proceeded to show Rembold the conditions of the home, and Rembold stated that he would document this in a report.

19. Notably, the report ultimately submitted by Rembold states that Plaintiff was arrested for recklessly endangering another person, which is incorrect; Plaintiff was the individual who reported the conditions to which Kuhns was subjecting SK.

20. Around 5:00 p.m. on October 17, 2018, Kuhns called Unkaford. After speaking with Unkaford, Kuhns requested that Unkaford put Plaintiff on the phone.

21. Kuhns then requested that Plaintiff bring items to Kuhns at the hospital. Unkaford, at Kuhns's direction, subsequently gave Plaintiff a key to the home so that Plaintiff could retrieve items for Kuhns and come back to get clothing for SK.

22. Plaintiff took the items Kuhns requested to her at the hospital, and then returned back to the property to retrieve clothing for SK.

23. At some time subsequent to that, Kuhns learned about Plaintiff calling the OCPD about the living conditions of her home, which angered Kuhns who then contacted OCPD herself.

24. At approximately 6:00 p.m., Plaintiff, Dascombe, and SK were searching the attic at Kuhns's residence for clean clothes for SK.

25. As Plaintiff, Dascombe, and SK were searching the attic, Plaintiff heard individuals downstairs asking who was in the attic. It is believed and therefore averred that these individuals were Defendants Rosenberger and Love.

26. Plaintiff, Dascombe, and SK descended from the attic to the main level of the home and outside to the front lawn, wherein Rosenberger questioned Plaintiff about items located in a car outside the home.

27. Plaintiff repeatedly informed Rosenberger that this was not her car (and in fact, it was not her car), and she did not have keys to the car in order give him access to the items inside.

28. Rosenberger continued to insist that Plaintiff let him search the car, saying "God damn you…let me in that car!"

29. Plaintiff said to Rosenberger "[P]lease don't swear at me."

30. Rosenberger became frustrated and continued yelling at Plaintiff. He then grabbed Plaintiff's arm and breast, slammed her backwards and then forwards onto the side of the patrol car, and handcuffed her right hand.

31. Defendant Love then came to assist Rosenberger in placing Plaintiff into the patrol car. Love grabbed Plaintiff's left hand and assisted in handcuffing Plaintiff.

32. As she was being placed in the patrol car, Rosenberger kicked Plaintiff in the legs in an attempt to get her to lower into the vehicle.

33. When Plaintiff inquired why Rosenberger kicked her, he stated "because I can."

34. Once Plaintiff was detained in the patrol car, Rosenberger told Plaintiff that "if you take my charges, I'll let you go home."

35. When Plaintiff refused to admit to wrongdoing, Rosenberger told her that he would "do it the hard way."

36. Plaintiff was subsequently transported to the holding cell at the Oil City Police Department and detained there for approximately five (5) hours.

37. While incarcerated, Defendant Love questioned Plaintiff about rings that Plaintiff had in her possession.

38. This questioning was allegedly in relation to Kuhns reporting that $3,000 worth of jewelry was missing from her home.

39. The jewelry in Plaintiff's possession, however, was hers and did not match that of Kuhns's initial description of any property she claimed to be missing.

40. It is believed, and therefore averred that after Plaintiff was arrested Kuhns was encouraged by Love—after he showed Kuhns pictures of the rings taken from Plaintiff—to state that the rings taken from Plaintiff were Kuhns's.

41. Plaintiff was ultimately charged with aggravated assault, harassment, simple assault, theft by unlawful taking, and receiving stolen property.

42. Plaintiff was released upon posting $10,000 bond.

43. A nolle prosequi was entered on April 26, 2019 for all of the above charges. A copy of the order stating the same is attached hereto, incorporated herein, and labeled "**Exhibit 1**."

44. All of the rings taken from Plaintiff and purportedly identified by Kuhns as hers were returned to Plaintiff following the withdrawal of all charges against her.

## Excessive Force Violation

45. On October 17, 2018, Plaintiff had a clearly established constitutional right to be free from excessive force.

46. On October 17, 2018, Plaintiff did not pose any threat to the Defendants or civilians.

   a. Plaintiff is 5' 2", while Rosenberger is 6' 1";

   b. Plaintiff was 49 years old, while Rosenberger was approximately 23;

   c. On October 17, 2018, the Plaintiff was not armed;

   d. Plaintiff was not violent;

   e. Plaintiff did not actively resist arrest;

   f. Plaintiff did not attempt to flee; and

   g. Plaintiff was outnumbered at least 2 to 1

47. The actions of Defendant Rosenberger were not necessary to affect Plaintiff's arrest.

48. The actions of Defendant Rosenberger were objectively unreasonable and excessive in light of the facts and circumstances confronting them.

49. Defendant Love had an obligation to stop Defendant Rosenberger from using excessive force on the Plaintiff, yet he did nothing to intercede.

50. Defendant Love had an obligation to properly control and supervise the conduct of Defendants Rosenberger who was under his command at that time.

51. All Defendants were state actors acting under color of state law.

### Wrongful Arrest/Malicious Prosecution Violation

52. Defendants did not have a warrant for Plaintiff's arrest.

53. Defendants did not observe Plaintiff commit any criminal acts.

54. Defendants knew that Plaintiff was at Kuhns's residence with Kuhns's permission.

55. Defendants knew that Plaintiff had made an earlier report to OCPD about the condition of Kuhns's residence and that Plaintiff's report was objectively true.

56. To the extent that the Defendants purportedly relied on the statements of others in arresting Plaintiff, such reliance was objectively unreasonable under the circumstances.

57. Prior to filing assault charges against Plaintiff, the Defendants knew that Plaintiff had not engaged in any such conduct.

58. To the contrary, following Plaintiff's detention at the Defendants Rosenberger, Remold, and Love specifically discussed and agreed amongst themselves that they would present a false narrative about Plaintiff's actions on October 17, 2018 so as to excuse or justify Rosenberg's conduct that evening.

59. Additionally, prior to filing charges against Plaintiff for theft and receiving stolen property, the Defendants knew or reasonably should have known, that the rings taken by them from Plaintiff were in fact Plaintiff's, and that the car Rosenberger insisted she give him access to was not Plaintiff's.

60. The arrest of Plaintiff was made without probable cause or reasonable suspicion that Plaintiff had committed any crime.

61. Defendant Love had an obligation to properly control and supervise the conduct of Defendants Rosenberger and Rembold who were under his command at that time.

## COUNT I
### 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments – Excessive Force)
### Defendant Rosenberger

62. All previous paragraphs are incorporated herein by reference as though fully set forth.

63. Plaintiff makes a claim under 42 USC § 1983 for violation of the Fourth and Fourteenth Amendments of the U.S. Constitution.

64. As of October 17, 2018, it was clearly established that the Fourth Amendment (as well as the Fourteenth Amendment) does not permit Defendants to use excessive force.

Graham v. Connor, 490 U.S. 386, 393-94 (1989); Abraham v. Raso, 183 F.3d 279, 288 (3rd Cir. 1999); Kist v. Fatula, 2007 U.S. Dist. LEXIS 60615, *48 (W.D.Pa. 2007).

65. As of October 17, 2018, it was clearly established that "an unarmed, uncooperative individual, who is not suspected of a serious crime, had the right to be free from being dragged, slammed, or taken to the ground," even if the individual is being verbally uncooperative or resists passively. El v. City of Pittsburgh, 2020 U.S. App. LEXIS 29449, *20-*27 (3rd Cir. 2020).

66. Excessive force claims are subject to an objective reasonableness standard. Graham, supra.; Carswell v. Borough of Homestead, 381 F.3d 235; United States v. Johnstone, 107 F.3d 200, 205 (3rd Cir, 1997).

67. Courts must evaluate the reasonableness of the Defendant's conduct on a case-by-case basis considering include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

68. Courts in the Third Circuit also must consider "the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers may contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997) (*abrogated on other grounds by* Curley v. Klem, 499 F.3d 199 (3d Cir. 2007)).

69. Looking at these considerations in the context of the instant matter:

    a.    Here, the purported "crime" at issue was theft by unlawful taking or disposition, and/or receiving stolen property;

    b.    Plaintiff posed no immediate threat to anyone, officer or civilian;

    c.    Plaintiff was not actively resisting arrest;

    d.    Plaintiff did not attempt to evade the Defendants or to flee;

    e.    There was no indication or concern that Plaintiff was armed; and

    f.    There were two officers to contend with one individual.

70. Defendant Rosenberger's use of force against Plaintiff was not reasonable under the circumstances and was excessive.

71. Defendant Rosenberger's conduct toward Plaintiff was grossly negligent, deliberately indifferent, and showed reckless disregard for Plaintiff's rights.

Wherefore, as a direct and proximate result of the actions of Defendant Rosenberger, Plaintiff has suffered damages as set forth below in an amount in excess of $75,000.00, together with costs, counsel fees, and such other relief as the Court shall deem necessary and just.

## COUNT II
### 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments – Duty to Intervene)
### Defendant Love

72. All previous paragraphs are incorporated herein by reference as though fully set forth.

73. Plaintiff brings this claim under 42 USC § 1983 for violation of the Fourth and Fourteenth Amendments of the U.S. Constitution.

74. Defendant Rosenberger's use of force against Plaintiff was excessive.

75. Defendant Love was, at all times relevant to this encounter, in a position to immediately and effectively intervene in the situation in time to prevent the excessive use of force against Plaintiff.

76. Defendant Love had a duty to intervene and protect Plaintiff from the excessive force applied by the Defendant Rosenberger but failed to do so. Smith v. Mensinger, 293 F.3d 641, 650-651 (3rd Cir. 2002); Garbacik v. Janson, 111 Fed.Appx. 91, 94 (3rd Cir, 2004). *See also* Baker v. Monroe Twp., 50 F.3d 1186, 1193-1194 (3rd Cir. 1995).

Wherefore, as a direct and proximate result of Defendant Love's actions (and failure to take action), Plaintiff has suffered damages as set forth below in an amount in excess of $75,000.00, together with costs, counsel fees, and such other relief as the Court shall deem necessary and just.

**COUNT III**
**42 U.S.C. § 1983 (Fourth and Fourteenth Amendments –**
**Wrongful Arrest and Malicious Prosecution)**
**All Defendants**

77. All previous paragraphs are incorporated herein by reference as though fully set forth.

78. Plaintiff makes a claim under 42 USC § 1983 for violation of the Fourth and Fourteenth Amendments of the U.S. Constitution.

79. As of October 17, 2018, Plaintiff had a clearly established constitutional right to be free from wrongful arrest and malicious prosecution under the Fourth and Fourteenth Amendments.

80. Any reasonable police officer knew or should have known of these rights.

81. The Defendants violated Plaintiffs Fourth and Fourteenth Amendment rights when they arrested her without probable cause and without due process when they worked, individually or in concert, to secure false charges against her, resulting in her unlawful arrest, confinement, and prosecution.

82. The individual Defendants conspired and/or acted in concert to institute, procure, and continue criminal proceedings against Plaintiff without probable cause.

83. The individual Defendants engaged in the conduct described in this Complaint willfully, maliciously, in bad faith, and with reckless disregard of Plaintiff's federally protected constitutional rights.

84. The procurement of Prosecution against Plaintiff based upon allegations known to be false was malicious, shocking, and objectively unreasonable in light of the circumstances.

85. Those criminal proceedings terminated in Plaintiff's favor, with all charges being dropped without any compromise by Plaintiff.

86. The acts or omissions of all individual Defendants were moving forces behind Plaintiff's injuries.

87. The acts or omissions of all individual Defendants intentionally deprived Plaintiff of her constitutional and statutory rights and caused her other damages.

Wherefore, as a direct and proximate result of Defendant Love's actions (and failure to take action), Plaintiff has suffered damages as set forth below in an amount in excess of $75,000.00, together with costs, counsel fees, and such other relief as the Court shall deem necessary and just.

**COUNT IV**
**42 U.S.C. § 1983 (Fourth and Fourteenth Amendments – Supervisory Liability)**
**Defendant Love**

88. All previous paragraphs are incorporated herein by reference as though fully set forth.

89. Defendant Love was at all times relevant to this action acting under color of state law.

90. It is believed, and therefore averred that Defendant Love held a supervisory role vis-à-vis Defendant Rosenberger.

91. Defendant Love was the officer-in-charge at the scene of Plaintiff's arrest on October 17, 2018.

92. Defendant Love failed to supervise Defendant Rosenberger to assure that, at the time of Plaintiff's arrest, reasonable steps were taken to not expose Plaintiff to an excessive and unreasonable use of force.

Wherefore, as a direct and proximate result of Defendant Love's actions (and failure to take action), Plaintiff has suffered damages in an amount in excess of $75,000.00, together with costs, counsel fees, and such other relief as the Court shall deem necessary and just.

## COUNT V
### 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments – Official Capacity Liability)
### Defendant Love

93. All previous paragraphs are incorporated herein by reference as though fully set forth.

94. Further, the Defendant Love, as a Lieutenant for OCPD, is a policymaker for OCPD and therefore Oil City.

95. Love's participation in and ratification of these acts and omissions constitutes a custom, practice, policy, or decision of OCPD and therefore of Oil City, pursuant to which all individual Defendants acted.

96. The customs, practices, policies, or decisions by Love in his official capacity exhibited deliberate indifference to the constitutional rights of citizens and were the moving force behind and the proximate cause of the violations of Plaintiff's federally protected constitutional and statutory rights.

Wherefore, as a direct and proximate result of Defendant Love's actions (and failure to take action) and the customs, practices, policies, and decisions of Love as a policymaker for Oil City, Plaintiff has suffered damages as set forth below in an amount in excess of $75,000.00, together with costs, counsel fees, and such other relief as the Court shall deem necessary and just.

## DAMAGES

97. As a direct and proximate result of the Defendants' actions, Plaintiff has suffered the following injuries and damages, some, or all of which may be permanent:

a.  Violation of her federally protected constitutional rights under the Fourth and Fourteenth Amendments;

b.  Sprain of the left wrist;

c.  Chronic proximal bilateral C5-C6 and C6-C7 pathway involvement and localization at the root level;

d.  Continued and chronic pain and numbness in Plaintiff's wrist, fingers, and cervical spine;

e.  Emotional distress, embarrassment, and anxiety;

f.  Past, present, and future medical expenses; and

g.  Lost future earning capacity.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against the Defendants, and grant the following:

A.  Enter an Order declaring the conducts of all Defendants to be violative of Plaintiff's federally protected constitutional rights;

B.  Enter judgment on behalf of Plaintiff against Defendants for reasonable damages (actual and compensatory) sufficient to compensate her for the violation of her Fourth and Fourteenth Amendment rights and rights under the laws of the Commonwealth of Pennsylvania as well as her injuries as set forth above;

C.  Order Defendants to pay punitive and other exemplary damages based on 42 U.S.C. § 1983 claims;

D. Order Defendants to pay Plaintiff's attorneys' fees and costs as authorized by 42 U.S.C. §1988; pre-judgement interest and any other relief deemed necessary and proper; and

E. Grant all other and additional relief to which Plaintiff may be entitled.

Respectfully submitted,

QUINN, BUSECK, LEEMHUIS, TOOHEY
& KROTO, INC.

By /s/Arthur D. Martinucci
Arthur D. Martinucci, Esquire
amartinucci@quinnfirm.com
Pa. I.D. No. 63699
Megan C. Willey, Esquire
mwilley@quinnfirm.com
Pa. I.D. No. 327321
2222 West Grandview Boulevard
Erie, PA 16506-4509
(814) 833-2222
Attorneys for Plaintiff,
Gayle A. Raybuck